UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD L. JOHNSON

          Plaintiff,         Civil Action No. 14-12327
                                   Honorable Terrence G. Berg
                                   Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 12]**

      Plaintiff Chad L. Johnson ("Johnson") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.    RECOMMENDATION

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Johnson is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Johnson's Motion for Summary Judgment [11] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On September 2, 2011, Johnson filed applications for DIB and SSI, alleging a disability onset date of August 15, 2011. (Tr. 66, 76-77). These applications were denied initially on February 3, 2012. (Tr. 78-87). Johnson filed a timely request for an administrative hearing, which was held on January 30, 2013, before ALJ Thomas Walters. (Tr. 31-54). Johnson, who was represented by attorney Robert Gaecke, testified at the hearing, as did vocational expert Joanne Pfeffer. (*Id.*). On February 11, 2013, the ALJ issued a written decision finding that Johnson is not disabled. (Tr. 18-27). On April 21, 2014, the Appeals Council denied review. (Tr. 1-4). Johnson timely filed for judicial review of the final decision on June 13, 2014. (Doc. #1).

### B.     Background

#### 1.     *Johnson's Disability Reports and Testimony*

At the time of the January 30, 2013 administrative hearing, Johnson was 27 years old. (Tr. 35). He graduated from high school and took some college classes. (Tr. 35-36). He lived in a house with his fiancée and four-year-old daughter. (Tr. 36, 178). For approximately eighteen months – up until August of 2011 – he had worked for a company that contracted with Comcast to perform telephone, internet, and cable installations. (Tr. 36-37). At that time, however, he awoke one morning with "severe pain all through [his] body and a burning sensation in [his] neck and shoulders." (Tr. 37). After approximately one month off work, he attempted to return to his previous employment but was unable to do so with any consistency. (*Id.*).

Johnson testified that he still suffers from "horrible" back pain, which radiates down his legs, gets worse with activity, and makes it difficult to sleep. (Tr. 40). He says that, since he has been off work, his pain has "gotten 10 times worse." (Tr. 41). He attended physical therapy,

2

which did not help. (Tr. 48). Surgery has not been recommended, and his doctors suggest instead that he focus on pain management. (Tr. 47-48). He also suffers from fibromyalgia. (Tr. 172). At the time of the administrative hearing, he was taking Cymbalta, baclofen, and naproxen for pain, muscle spasms, and inflammation. (Tr. 40).[1]

Johnson indicated that he takes a nap most days because he does not sleep well at night. (Tr. 44). He also testified that he cannot sit or stand "for too long" before he experiences back pain. (Tr. 45). He is able to shop for groceries with his fiancée, although he starts "bugging her after maybe 20 minutes to leave." (Tr. 45-46, 181). He is able to drive and has no trouble with personal care. (Tr. 179, 181). On a good day, he is able to do light housework or yard work; on a bad day, he watches television or plays video games. (Tr. 178). He feeds, bathes, dresses, and plays with his young daughter; prepares simple meals; mows the lawn; takes the garbage out; and spends time with family. (Tr. 179-82). He indicated that he can walk "pretty far," can pay attention for "a long time," and can follow written and spoken instructions well. (Tr. 183).

    2.    *Medical Evidence*

The medical records indicate that Johnson began complaining of back pain to his primary care physician in January 2011. (Tr. 250). Lumbar spine x-rays taken that month were normal. (Tr. 225). On May 6, 2011, Johnson underwent an MRI of his lumbar spine, which showed central disc herniation at L5-S1, and mild spondylosis in the thoracic spine with disc protrusion at the C6-C7 and T7-T8 levels, but no central canal or foraminal stenosis. (Tr. 239-42).

On May 9, 2011, Johnson was evaluated by Robert Shurmur, D.O. (Tr. 226-28). He complained of pain and stiffness in the cervical, upper thoracic, and lower lumbar regions, and

---

[1] Additionally, Johnson testified that, in November 2012, he was in a car accident when, as a result of new medication he was taking, he drove his car into a tree. (Tr. 42-43, 256-64). He suffered a pulmonary contusion and a puncture wound to his right knee. (Tr. 46, 256).

3

reported difficulty sleeping due to pain. (Tr. 226). On examination, he had tenderness to palpation over the SI joint region, right greater than left. (Tr. 227). Dr. Shurmur considered the possibility that Johnson's back pain was consistent with a "seronegative spondyloarthropathy including ankylosing spondylitis, reactive arthritis, IBD-related arthritis, or other etiology." (Tr. 228). Although he ordered numerous blood tests, there is no indication in the record of these test results, nor is there a formal diagnosis of any of these conditions.

The next month, Johnson presented to Southern Michigan Pain Consultants, where he reported "excruciating" back pain. (Tr. 231). At that time, he was still working full-time, however. (*Id.*). On examination, Johnson had positive straight leg raising bilaterally, and he was diagnosed with bilateral lumbar radiculopathy, fibromyalgia, thoracic spine pain, and lumbar degenerative disc disease. (Tr. 232). He underwent a lumbar epidural steroid injection, which he subsequently indicated provided no relief. (Tr. 229, 233).

On November 12, 2011, Johnson underwent a consultative examination with Robert Jamieson, D.O. (Tr. 251-55). He complained of constant, achy back and neck pain, with occasional sharp, stabbing pain that was worse with standing in one position, bending, lifting, or twisting. (Tr. 251). He reported undergoing physical therapy and injections, saying that neither helped. (*Id.*). He also reported chronic pain in all of his muscles and joints. (*Id.*). However, he indicated that he could walk ½ mile, sit for 30 minutes, and stand for 30 minutes. (*Id.*). On examination, Johnson walked with a limp on the right. (Tr. 252). He had tenderness to palpation of the cervical and lumbar spine areas and limited range of motion on flexion. (Tr. 253). He also had positive straight leg raising bilaterally, positive paravertebral muscle spasm, and more than thirteen trigger points. (*Id.*). Nevertheless, Johnson had full range of motion of all joints, with no tenderness, erythema, or effusion. (*Id.*). He had full dexterity of his hands and full grip

and fist strength. (*Id.*). His motor and sensory function remained intact, and his reflexes were present and symmetrical. (*Id.*).

### 3. Vocational Expert's Testimony

Joanne Pfeffer testified as an independent vocational expert ("VE") at the administrative hearing before the ALJ. (Tr. 50-53). The VE characterized Johnson's past relevant work as a data communications technician as skilled in nature and medium in exertion. (Tr. 51). Then, the ALJ asked the VE to imagine a claimant of Johnson's age, education, and work experience, who could perform sedentary, unskilled work, with the following additional limitations: no interaction with the public, no prolonged walking beyond a city block, and no overhead reaching or lifting. (Tr. 51-52). The VE testified that the hypothetical individual would not be capable of performing Johnson's past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in the positions of call-out operator (960 jobs in Michigan's lower peninsula), surveillance system monitor (886 jobs), and final assembler (15,000 jobs). (*Id.*).

## C. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Johnson is not disabled under the Act.  At Step One, the ALJ found that Johnson has not engaged in substantial gainful activity since August 15, 2011, the alleged onset date.  (Tr. 20).  At Step Two, the ALJ found that Johnson has the severe impairments of fibromyalgia and "back problems related to disc herniation at the L5-S1 level, spondylosis in the thoracic spine, and disc protrusion at the C6-C7 and T7-T8 levels."[2]  (Tr. 20-23).  At Step Three, the ALJ found that Johnson's impairments do

---

[2] The ALJ also found that Johnson's Osgood Schlatter's syndrome, high blood pressure, right

not meet or medically equal a listed impairment.  (Tr. 23).

The ALJ then assessed Johnson's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary, unskilled work, with the following additional limitations: no interaction with the public, no prolonged walking greater than a city block, and no overhead reaching or lifting.  (Tr. 23-25).

At Step Four, the ALJ determined that Johnson is unable to perform his past relevant work.  (Tr. 25).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Johnson is capable of performing a significant number of jobs that exist in the national economy. (Tr. 26-27).  As a result, the ALJ concluded that Johnson is not disabled under the Act.  (Tr. 27).

**E.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

---

knee problems, depression, and anxiety were not severe impairments.  (Tr. 21-22).  Johnson does not challenge these conclusions.

(internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F. Analysis**

Johnson argues that, pursuant to sentence six of 42 U.S.C. §405(g), the Court should remand the case to the ALJ for consideration of evidence that was not submitted to the ALJ, but was submitted to (and considered by) the Appeals Council. (Doc. #11). The ALJ issued his written decision, finding that Johnson was not disabled under the Act, on February 11, 2013.

(Tr. 18-27). Approximately one month later, on March 14, 2013, Johnson saw Brian Chodoroff, M.D., at Chelsea Back Care for a "consultation related to spine and extremity pain and associated symptoms." (Tr. 7). In his written summary of this visit, Dr. Chodoroff referenced imaging studies that were performed of Johnson's lumbar, thoracic, and cervical spines in May 2011 and May 2012. (Tr. 7). Although Dr. Chodoroff did not review the *images* of the May 2012 MRI scans, it appears that he did review the *report* of these scans, saying:

> The thoracic, cervical and lumbar MRI scans of 5/4/12 were also reviewed as related to reports, but not images. [Johnson] had some foraminal changes in his cervical MRI. Nothing stood out in his thoracic images. His lumbar MRI was described as revealing a moderate sized, right central disc extrusion with caudal extension and involvement of the right S1 spinal nerve.

(*Id.*). Johnson argues that a sentence six remand is appropriate because the ALJ did not have the benefit of Dr. Chodoroff's impression that there was "involvement of the right S1 spinal nerve," and that his lumbar spine impairment "may be progressive as these findings of 5/4/12 were described in terms suggesting progression in comparison with the 5/6/11 MRI." (Doc. #11 at 14-15 (citing Tr. 7-8)). Specifically, Johnson argues that, if the ALJ had had the benefit of this medical evidence, he may have found that Johnson meets the requirements of Listing 1.04A and/or he may not have discounted Johnson's credibility.[3]

A sentence six remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551,

---

[3] In addition to arguing for a sentence six remand, Johnson asserts that the "ALJ's opinion is not supported by substantial evidence because the ALJ did not have the opportunity" to examine Dr. Chodoroff's notes. (Doc. #11 at 14). It is clear, however, that evidence that was not before the ALJ cannot be considered for purposes of substantial evidence review of the ALJ's decision. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) (where the Appeals Council denies review of the ALJ's decision, evidence first submitted to the Appeals Council cannot provide a basis for deeming the ALJ's decision unsupported by substantial evidence). Thus, this argument is without merit.

9

554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Evidence is "material" if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. Johnson has failed to establish any of these criteria.

As an initial matter, despite the fact that Dr. Chodoroff's notes were drafted in March 2013 – after the ALJ's decision in this case – they can hardly be considered "new" evidence. Rather, the portion of Dr. Chodoroff's notes upon which Johnson relies consists of Dr. Chodoroff's description of Johnson's May 2011 and May 2012 MRI results.[4] (Doc. #11 at 9 (citing Tr. 8)). Both of these MRIs, then, were completed *before* the ALJ's decision, and Dr. Chodoroff's reference to them does not constitute considered "new" evidence. Otherwise, a claimant could generate "new" medical evidence *ad infinitum* simply by asking a physician to review and comment on previous studies or test results.

Moreover, even if the Court deemed Dr. Chodoroff's notes "new" evidence, Johnson has offered no explanation whatsoever for why he was unable to obtain this evidence prior to the administrative hearing. As set forth above, "good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. As this Court has recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's

---

[4] Inexplicably, these May 2012 MRI results are not contained in the administrative record.

10

decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *4 (E.D. Mich. Aug. 27, 2012) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Richardson*, 2012 WL 4210619, at *4. Here, Johnson has not offered *any* explanation for why he did not consult with Dr. Chodoroff prior to the ALJ's decision. Thus, he has not established good cause for his failure to obtain this evidence sooner.

Finally, Johnson has not shown that the portions of Dr. Chodoroff's March 2013 notes upon which he relies were "material." The Sixth Circuit has held that for new evidence to be material there must be "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Here, it can hardly be said that the ALJ would have reached a different decision if presented with Dr. Chodoroff's notes, as they are not particularly supportive of Johnson's disability claim. For example, Johnson testified at the administrative hearing that his back pain was "horrible" (Tr. 40), but Dr. Chodoroff's notes from three different visits all state that he was in no acute distress. (Tr. 8, 10, 13). Indeed, Dr. Chodoroff's notes from Johnson's May 20, 2013, office visit state that he found Johnson's "LE symptoms improved significantly and have not returned to any degree. His low back is sometimes a bit uncomfortable. Otherwise, back and lower extremity symptoms are no longer an issue (at least for now)." (Tr. 13).

Johnson argues that Dr. Chodoroff's notes are "material" because they suggest that he "may meet Listing 1.04." (Doc. #11 at 15). Specifically, Johnson points to Dr. Chodoroff's impression – after reviewing the May 2011 and May 2012 MRI reports – that Johnson had "right

11

central L5-S1 disc extrusion with caudal extension and *involvement of S1 spinal nerve*." (*Id.* at 9, 14-15 (citing Tr. 9) (emphasis added)). According to Johnson, this observation suggests that he may meet Listing 1.04A. However, Listing 1.04A requires nerve root *compression*, and Dr. Chodoroff's notes indicate only that there is nerve *involvement*; nowhere does Dr. Chodoroff indicate that there is any evidence of nerve root compression. Moreover, even if there was such evidence, Dr. Chodoroff's own treatment notes show normal upper and lower extremity strength, intact sensation, and a negative straight leg raise test. (Tr. 8, 10, 13). Thus, the very evidence on which Johnson relies belies his claim that he suffers from a listing level impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04A (requiring a claimant to demonstrate, among other things, muscle weakness, reflex loss, and sitting and supine positive straight leg raise tests, in addition to nerve root compression, if there is involvement of the lower back); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.").[5]

Finally, although not entirely clear, Johnson appears to argue that Dr. Chodoroff's March 2013 notes are "material" because they contradict the ALJ's credibility determination. (Doc. #11 at 15-17). Specifically, Johnson points to the ALJ's interpretation of his May 2011 lumbar spine MRI as showing "no central canal or foraminal stenosis." (Doc. #11 at 16 (citing Tr. 24, 226)). According to Johnson, Dr. Chodoroff's impression that the May 2012 lumbar spine MRI showed "'involvement of S1 spinal nerve' is in direct contradiction of the ALJ's view of the medical

---

[5] Johnson points out that two other physicians had documented positive straight leg raising tests in the past. (Doc. #11 at 15 (citing Tr. 232, 253)). However, this occurred in June 2011 and November 2011 – nearly two years and nearly eighteen months, respectively, before Dr. Chodoroff's consultation. Courts have recognized that the requirements of Listing 1.04A "are conjunctive; there must be evidence of limited motion *and* motor loss *and* positive straight-leg raising tests." *Brown v. Comm'r of Soc. Sec.*, 2013 WL 6537980, at *11 (E.D. Mich. Nov. 18, 2013). At no time did a physician document the existence of all three of these deficiencies, along with nerve root compression.

evidence.'" (*Id.* at 17). Johnson's credibility argument misses the mark.[6] First, he does not make any effort to develop this argument any further. Although he seems to be arguing that "involvement of [the] S1 spinal nerve" necessarily demonstrates the existence of central canal or foraminal stenosis, he cites no authority (medical, legal, or otherwise) for such a proposition. Moreover, Dr. Chodoroff's own notes indicate that the S1 spinal nerve was affected by "right central L5-S1 disc extrusion with caudal extension" (Tr. 7), not by central canal or foraminal stenosis. (*See also* Tr. 10 ("low back and right greater than left lower extremity pain, *most likely secondary to extruded central to right disc* at L5-S1 causing chronic nerve and dural irritation.") (emphasis added)). In other words, Johnson has not shown that there is any conflict between Dr. Chodoroff's interpretation of the May 2012 MRI report and the ALJ's discussion of the May 2011 MRI results. Because Johnson has not established a reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability if presented with Dr. Chodoroff's notes, the notes are not material, and he is not entitled to a sentence six remand.

In sum, based on the above analysis and the Court's detailed review of the record, it finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

---

[6] The Court notes that contrary to the implication of Johnson's argument, the ALJ's credibility analysis was not limited to this one issue. Rather, in discounting Johnson's credibility, the ALJ appropriately noted that Johnson had "described daily activities [] which were not limited to the extent one would expect, given his complaints of disabling symptoms and limitations." (Tr. 25). In particular, the ALJ noted that Johnson reported being able to walk reasonably long distances (and the Court notes that Dr. Chodoroff recommended that Johnson continue doing so (Tr. 10, 13]), go outside multiple times daily, drive, perform tasks such as preparing meals, mowing the lawn and taking out the trash, perform light housework, and play with and take care of his daughter. (Tr. 25). *See* 20 C.F.R. §416.929(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *see also Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 (6th Cir. 1997) (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain).

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Johnson's Motion for Summary Judgment **[11]** be **DENIED**, the Commissioner's Motion **[12]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: March 19, 2015  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2015.

  s/Eddrey O. Butts
  EDDREY O. BUTTS
  Case Manager